IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
MISSOULA DIVISION

| | |
|---|---|
| RANDY RICHTER, JEANETAMARIE ANDERSON, NICOLE JAMES, JAMAAL JOSEPH, BRIAN LOVELESS, LORI WEBSTER-BRUNO, et al., | CV 22–47–M–DLC |
| Plaintiffs, | ORDER |
| vs. | |
| AUTOZONERS, LLC; AUTOZONE STORES, INC.; AUTOZONE PARTS, INC.; and AUTOZONE, INC. | |
| Defendants. | |

Before the Court is Plaintiffs' Motion to Issue Notice to Similarly Situated Employees.  (Doc. 32.)  The motion requests that the Court authorize a notice of the underlying Federal Labor Standards Act ("FLSA") suit to similarly situated AutoZone store managers that worked in Montana and the surrounding areas between 2019 and 2022.  (Doc. 33 at 5.)  Defendants oppose the motion.  The Court grants the motion to issue notice for the reasons set forth below.

## FACTUAL BACKGROUND

Defendants AutoZoners, LLC; AutoZone Stores, Inc.; AutoZone Parts, Inc.; and AutoZone, Inc. (collectively "AutoZone") specialize in the retail and

distribution of auto parts and accessories throughout the United States.  (Doc. 43 at 17.)  AutoZone stores are organized geographically into divisions and regions.  (*Id.*)  Each region is further divided into districts, each district typically including 12 to 15 stores.  (*Id.*)  Each region has a regional manager, and each district has a district manager.  (*Id.*)  These managers are responsible for the overall economic performance of their respective region or district.  (*Id.*)

AutoZone stores in Montana fall within three AutoZone regions: the Denver Region, Salt Lake Region, and Seattle Region.  *Id.*  Collectively, these three regions include stores in eight states.  *Id.*  AutoZone stores in Montana fall within six districts, each overseen by a different district manager.  (Doc. 43 at 16.)

Plaintiffs are current and former AutoZone employees, all of whom held roles as store managers in the state of Montana between the years 2019 and 2022.  (Doc. 33 at 9–10.)  Plaintiffs brought this action pursuant to the FLSA, alleging that AutoZone willfully misclassified them as exempt from overtime compensation, resulting in denial of compensation for their hours of work in excess of forty hours per week.  (Doc. 1 at 8.)

## PROCEDURAL BACKGROUND

This is not the first time Plaintiffs have participated in an FLSA collective action against Defendants.  In *Carr v. AutoZoner, LLC*, No. 5:15-cv-00356-AKK, 2021 WL 4894610, at *1 (N.D. Ala. Oct. 20, 2021), plaintiffs sought to create a

collective consisting of AutoZone store managers throughout the United States. The court initially certified the collective, and more than 1,500 current and former store managers, including Plaintiffs, opted in. *Id.*

After conducting depositions, AutoZone moved to decertify the collective, arguing that the plaintiffs had not shown they were similarly situated and that the differences amongst plaintiffs would require AutoZone to "present an individualized defense for each plaintiff . . . [resulting] in numerous mini-trials." *Id.* The court granted AutoZone's motion, finding that the plaintiffs' roles differed as to "their daily responsibilities, discretion over managerial tasks, [and] authority for hiring." *Id.* Additionally, the court found differences in the weight given to store managers by district managers as to recommendations regarding the hiring, pay rates, and promotions of other AutoZone staff. *Id.* Based on these differences, the court decertified the class, concluding that the store manager plaintiffs had failed to establish that they were similarly situated. *Id.*

Five months later, Plaintiffs commenced this action. On March 22, 2023, Plaintiffs moved the Court to issue notice to similarly situated store managers in Montana and the surrounding states. (Doc. 32.) Plaintiffs' proposed collective is defined as:

> "AutoZone [store managers ("SMS")] who worked under the following
> AutoZone District Managers ("DMs"), by year:

- 2019: SMs who were managed by Dennis Thompson, Jr. (roughly, SMs in eastern Montana and its surrounds) or Aaron Adams (roughly, SMs western Montana and its surrounds)
- 2020: SMs who were managed by Chad Hughes (east) or Aaron Adams (West)
- 2021: SMs who were managed by Chad Hughes (east), Ethan Hunt (central Montana, among other areas), or Michael Tucker (west)
- 2022: SMs who were managed by Chad Hughes (east), Lyden Christensen (central Montana, among other areas), or Michael Tucker (west)

(*Id.*)  This proposed collective includes store managers who worked in non-Montana stores under the above district managers, as well as those that worked within Montana.  (*Id.*)

Plaintiffs contend they are similarly situated to members of the proposed collective because they "(1) hold the same position, (2) for the same employer, (3) in the same geographical area, (4) are dominated and controlled by the same [district managers], [and] (5) are subject to the same AutoZone practices and working conditions that violate the FLSA."  (*Id.* at 12.)  Specifically, Plaintiffs attest that district managers are the actual managers, and that store managers are "tightly controlled in their work" by district managers.  (*Id.*)  In addition, Plaintiffs attest that store managers' most important function is manual labor or sales and customer service.  (*Id.* at 13.)  According to Plaintiffs, store managers are sent away from their home store to perform labor at other stores, and while they are away hourly employees perform their job.  (*Id.*)  Plaintiffs contend that these

practices are common among AutoZone stores in the area.  (*Id.* at 13.)  Based on

these claims, Plaintiffs argue they "readily satisfy the 'lenient,' 'plausibility'

standard required to issue notice."  (*Id.* at 13.)

Plaintiffs request that the Court order AutoZone to provide Plaintiffs'

counsel with the names, mailing addresses, email addresses, telephone numbers,

and social security numbers of all putative members of the proposed collective

within twenty (20) calendar days.  (*Id.* at 14.)  Plaintiffs argue that the provision of

social security numbers is common in class and collective litigation, and that

adopting such procedures "maximize[s] the chances that putative members receive

notice [and allows them to] . . . make their own choice about whether to join the

litigation." (Doc. 44 at 13.)

Defendants oppose the motion, arguing that (1) Plaintiffs are collaterally

estopped from relitigating issues previously decided in *Carr*, (2) the Court lacks

personal jurisdiction over the out-of-state store managers in Plaintiffs' proposed

collective, and (3) Plaintiffs do not satisfy the evidentiary burden to prove store

managers in the proposed class are similarly situated and subject to a common

decision, policy, or plan.  (Doc. 32 at 2.)  Defendants further argue that should the

Court approve issuance of notice to the collective, Plaintiffs proposed opt-in

period, notice, and methods of distribution are inappropriate.  (*Id.* at 50.)

DISCUSSION

## I. Conditional Certification

Under the FLSA, an employee may bring a cause of action against an employer for violations of the FLSA "by or on behalf of any employee." *Campbell v. City of Los Angeles*, 903 F.3d 1090, 1100 (9th Cir. 2018) (citing 29 U.S.C. § 216(b)). Such joint litigation is permitted where plaintiffs "(1) claim a violation of the FLSA, (2) are 'similarly situated,' and (3) affirmatively opt-in to the joint litigation, in writing." *Id.*

While neither the Supreme Court nor the Ninth Circuit have defined "similarly situated," district courts within the Ninth Circuit utilize a two-step certification process. *Id.* At the first step, plaintiffs will move the court for preliminary certification, also known as provisional or conditional certification. *Id.* at 1109. While the certification of a class requires the district court to make an "affirmative decision" as to whether the plaintiffs can proceed as a class, "a district court in a collective action plays no such gatekeeping role." *Id.* at 1101. Rather, in determining whether to conditionally certify a collective, a district court is to apply a lenient review of the pleadings "loosely akin to a plausibility standard." *Id.* This lenient standard "typically results in conditional [collective] certification." *Shaia v. Harvest Mgmt. Sub LLC*, 306 F.R.D. 268, 272 (N.D. Cal. 2015) (citing *Daniels v.*

6

*Aéropostale West, Inc.*, No. C 12-05755 WHA, 2013 WL 1758891, at *2 (N.D. Cal. Apr. 24, 2013)).

In order to succeed at the first step, the plaintiffs must substantially allege that the putative collective members were subject to a common policy, plan, or decision in violation of the FLSA. *Id.* at 272. The allegations may be supported by declarations or limited other evidence. *Campbell*, 903 F.3d at 1109. Because the notice stage does not include a merits-based evaluation of paintiffs' FLSA claims, the potential applicability of an FLSA exemption will not preclude preliminary certification. *Shaia*, 306 F.R.D. at 269.

In the present matter, Plaintiffs allege that Defendants have violated the FLSA by willfully and improperly classifying them as exempt and denying them overtime compensation. (Doc. 1 at 8.) Plaintiffs contend that they share common issues of law and fact with other AutoZone store managers in Montana and surrounding areas. Specifically, they are all current or former AutoZone store managers within the same geographic area, they are all controlled by the same district managers, and they are all subject to the same AutoZone practices that violate the FLSA. (Doc. 33 at 1.)

Plaintiffs support their allegations with declarations. Plaintiffs assert that as store managers they often work more than 40 hours a week but do not receive overtime compensation. (Docs. 34 at 2, 35 at 2, 36 at 2, 37 at 2, 38 at 2).

Additionally, they assert that they spend very little time working on management-related tasks, that they have little authority to manage absent direction from a district manager, and that their most important function is non-managerial in nature (i.e., manual labor or customer service).  (Docs. 34 at 3, 35 at 2–3, 36 at 3, 37 at 2, 38 at 3.)

The Court finds that Plaintiffs have satisfied the lenient standard typically applied at this stage of the proceeding.  Plaintiffs have made substantial allegations, supported by declarations, that they were subject to the same AutoZone practices and policies, and are thus similarly situated.  Plaintiffs have likewise substantially alleged that these same practices and policies violate the FLSA.  Because proceeding as a collective is not "truly infeasible, [the Court] cannot reject the party plaintiffs' choice to proceed collectively" due to possible inconvenience.  *Campbell*, 903 F.3d at 117.  The Court will conditionally certify the proposed collective as described in the pleadings.

## II. Collateral Estoppel

Defendants argue that Plaintiffs are collaterally estopped from litigating in this action due to their previous involvement in a nationwide collective action against AutoZone.

Collateral estoppel, also known as issue preclusion, promotes judicial economy and protects litigants from the burden of "relitigating an identical issue

with the same party or his privy." *Collins v. D.R. Hortin, Inc.*, 505 F.3d 874, 990

(9th Cir. 2007).  Under the doctrine of collateral estoppel, a party is precluded from

relitigating factual and legal issues that have been previously decided.  *Wolfson v.*

*Brammer*, 616 F.3d 1045, 1064 (9th Cir. 2010).  Collateral estoppel applies in

subsequent litigation when four elements are satisfied: "(1) the issue at stake was

identical in both proceedings; (2) the issue was actually litigated and decided in the

prior proceedings; (3) there was a full and fair opportunity to litigate the issue; and

(4) the issue was necessary to decide the merits." *Janjua v. Neufeld*, 933 F.3d

1061, 1065 (9th Cir. 2019) (quoting *Oyeniran v. Holder*, 672 F.3d 800, 806 (9th

Cir. 2012)).

Defendants contend that decertification of a nationwide collective precludes

opt-in plaintiffs from participating in subsequent collective actions, no matter how

narrow the subsequent collective may be.  Defendants support this contention by

citing a district court case from the Eastern District of California where the court

hypothesized that issuing an order decertifying a collective in an FLSA action

"would likely preclude other courts from certifying a FLSA collective action

brought by opt-in plaintiffs against defendant."  (Doc. 43 at 30) (citing *Sliger v.*

*Prospect Mortg., LLC*, No. CIV. S-11-465 LKK/EFB, 2012 WL 6005711, at *4

(E.D. Cal. Nov. 30, 2012)).  But the court there did not apply collateral estoppel to

a specific issue; rather, the court took the position that decertification would *likely* trigger issue preclusion in a subsequent action.

Other district courts have taken the opposite position. For example, in *Szittai v. Wells Fargo Financial, Inc.*, the District Court for the Northern District of Ohio rejected the argument that because a proposed collective was included within an already decertified nationwide collective, the proposed collective was necessarily precluded from proceeding in a subsequent collective action. No. 5:08-CV-1379, 2008 WL 4647739, at *1 (N.D. Ohio Oct. 20, 2008). The court explained "[t]hat a much broader class might not have common practices running throughout it does not speak to whether a more narrowly drawn class might have common practices." *Id.* at *4. Thus, the "issue of the viability of the class proposed in [the subsequent] action was not actually litigated or necessarily decided" in the previous action. *Id.* at *5.

Similarly, the Northern District of Georgia found that the denial of certification of a nationwide collective did not preclude subsequent conditional certification of an almost identical collective presenting the same claims where the subsequent collective was smaller. *Kirkland v. Wells Fargo Fin., Inc.*, No. CIV.A. 1:08-CV-1640T, 2008 WL 5381954, at *2 (N.D. Ga. Dec. 22, 2008).

The Court finds these latter decisions persuasive. A review of the pleadings and the supporting affidavits shows differences between the collective in *Carr* and

10

the proposed collective before the Court.  In *Carr*, the Court decertified the

nationwide collective of 1,500 AutoZone store managers after extensive discovery

revealed "differences with respect to the plaintiffs' performance of and discretion

over their managerial duties and their authority for hiring and promotions."  *Carr*,

2021 WL 4894610, at *1–2.  Specifically, the court found that (1) plaintiffs were

not similarly situated as to their primary duty; (2) plaintiffs' level of discretion and

authority differed as to scheduling, training, evaluating employees, recommending

pay raises, and disciplining employees; and (3) these differences existed due to

differences in district manager oversight of each store.  *Id.* at *13, 14–15, 21.

In contrast, here, Plaintiffs have asserted that their primary duty is non-

managerial manual labor and customer service, that they have little discretion over

their managerial duties, and that this is common practice within the six districts

included in the proposed collective.  (Docs. 34 at 3, 35 at 2–3, 36 at 3, 37 at 2, 38

at 3.)  Moreover, the conditionally certified collective in *Carr* consisted of over

1,500 store managers, likely encompassing the majority, if not all of AutoZone

regions and districts.  *Carr*, 2021 WL 4894610, at *5.   Meanwhile, the proposed

collective in this case consists of around 100 store managers from six districts.

(Doc. 33-1 at 2–6.)  The Court finds it illogical to conclude that factual and legal

differences amongst the nationwide collective automatically presumes factual and

11

legal differences amongst the store managers within six districts, thus precluding
conditional certification under collateral estoppel.

Because the issue before the Court is not identical to the issue analyzed in
*Carr*, collateral estoppel does not apply.  The Court does not find it necessary to
analyze the remaining elements of issue preclusion.

## III. Personal Jurisdiction

Next, Defendants argue that the Court should not approve issue of notice to
similarly situated store managers because this Court does not have personal
jurisdiction over out-of-state store managers' claims.  (Doc. 43 at 31.)  Defendants
cite the United States Supreme Court's opinion in *Bristol-Myers Squibb Co. v. Sup.
Ct. of Cal., San Francisco Cnty.*, 137 S. Ct. 1773 (2017), for the proposition that
the Court cannot assert personal jurisdiction over AutoZone "regarding claims
brought by out-of-state, opt-in FLSA plaintiffs that do not arise from the
defendant's contacts in the forum."  (*Id.* at 31–32.)  Defendants aver that because
specific jurisdiction is based on claim-specific minimum contacts, each opt-in
plaintiff must show that their alleged injuries arise out of or are related to
AutoZone's minimum contacts with the forum.  (*Id.* at 34.)

As Plaintiffs highlight in their reply brief, Judge Morris of this Court
previously weighed a similar argument and found that the Court had personal
jurisdiction over the claims of out-of-state opt-in plaintiffs.  *Seiffert v. Qwest*

*Corp.*, CV-18-70-GF-BMM, 2018 WL 6590836, at *1 (D. Mont. Dec. 14, 2018).

In *Seiffert*, a plaintiff brought a collective action against his former employer,

Century Link, alleging violations of the FLSA. *Id.* at *1. The proposed collective

included potential out-of-state opt-in plaintiffs. *Id.*

Like Defendants in the present case, Century Link cited *Bristol-Myers*

*Squibb* to support its proposition that the Court lacked personal jurisdiction over

the out-of-state opt-in plaintiffs' claims. *Id.* Judge Morris rejected that argument,

reasoning that the Supreme Court's analysis in *Bristol-Myers-Squibb* centered on

California state-based claims brought in state court, and "[it] 'left open the

question whether the Fifth Amendment imposes the same restrictions on the

exercise of personal jurisdiction by a federal court.'" *Id.* at *2 (citing *Bristol-*

*Myers Squibb Co.*, 137 S. Ct. at 1784 ). Further, nothing in the plain language of

the FLSA supported the proposition that collective actions were limited to only

include in-state plaintiffs' claims. *Id.* at *3.

The Court agrees with Judge Morris's analysis. If the Court were to accept

AutoZone's argument, it would greatly restrict the ability of workers to litigate

together under the FLSA, a consequence that would undermine the statute's "broad

worker-protective aims." *Cambell*, 903 F.3d at 1113. Like the Defendants in

*Seiffert*, AutoZone purposely availed itself to this forum by targeting customers in

Montana. The alleged injury, the withholding of compensation of named

13

plaintiffs, likewise took place within the forum.  The Court has personal

jurisdiction over the Plaintiffs' claims, and because "[t]he original plaintiff in a

collective action under the FLSA dictates a district court's analysis of specific

jurisdiction," this jurisdiction extends to potential out-of-state opt-in plaintiffs

within the proposed collective.  *Seiffert*, 2018 WL 6590836, at *4.

## IV. Evidentiary Burden

Next, Defendants argue that this Court should not issue notice to potential

opt-in plaintiffs because Plaintiffs have not met the evidentiary burden to show

they are similarly situated.  (Doc. 43 at 37.)  As discussed above, the Court has

determined that Plaintiffs have satisfied the lenient standard commensurate with

this stage of a collective action proceeding.  Defendants' arguments seem to focus

on possible exemptions under which Plaintiffs would not be entitled to overtime.

But these arguments are not to be considered at this stage in the litigation as "the

potential applicability of an FLSA exemption does not preclude conditional

certification."  *Shaia*, 306 F.R.D. at 272.  Thus, the Court will conditionally certify

Plaintiffs' proposed collective and allow notice to issue.

## V. Process for Notice

Finally, Defendants contest Plaintiffs' proposed opt-in period, notice, and

methods of distribution.  (Doc. 43 at 51.)  Defendants claim that the three-year

statute of limitations period is inappropriate as Plaintiffs have not offered argument

or evidence to support a finding of willfulness. (*Id.*) Plaintiffs counter, noting that they alleged willful violations of the FLSA in their complaint. (Doc. 44 at 13.) The Court finds that Plaintiffs' allegations regarding willfulness satisfy the plausibility standard and will therefore approve the three-year statute of limitations.

As to notice, Defendants claim that requiring the provision of social security numbers is inappropriate.[1] The Court agrees. The Court has previously found that absent unique circumstances, there is no need to provide additional information beyond names, mailing addresses, and email addresses. *See Casarotto v. Exploration Drilling, Inc.*, No. CV-41-BLG-SPW-CSO, 2015 WL 6080755, at *7 (D. Mont. Oct. 15, 2015); *see also Baker v. Sunburst Consulting, Inc.*, CV 16-124-BLG-SPW-TJC, 2017 WL 3271727 at *6 (D. Mont. July 6, 2017). Plaintiffs have not provided, and the Court is unaware of, a unique circumstance that would require Defendants to supply Plaintiffs with the social security numbers of their current and former employees.

Defendants also request a separate opportunity to further address Plaintiffs' proposed opt-in period, notice, and methods of distribution. (Doc. 43 at 51.) The Court does not find this necessary; thus, the request is denied.

---

[1] Defendants specifically contend that "district court[s] in the Ninth Circuit have found that requiring defendants to provide social security numbers and post notices in workplaces is inappropriate." But Plaintiffs have not requested notices to be posted in workplaces. Therefore, the Court will only address the Defendants' argument as to the requested provision of social security numbers.

CONCLUSION

Plaintiffs have plausibly alleged that they are similarly situated to putative members of the proposed collective, satisfying the lenient standard necessary to conditionally certify the collective. The Court finds preliminary certification of the proposed collective appropriate.

The Court rejects AutoZone's argument that decertification of a nationwide collective of store managers necessitates issue preclusion of any subsequent multi-state, multi-district store manager collectives, no matter how narrow the subsequent collective may be.  While the collective action before the Court here *may* ultimately fail for the same reasons in *Carr*, the Court cannot assume that this collective is identical to that in *Carr*.  The Court also rejects AutoZone's argument that the Court cannot assert jurisdiction over potential out-of-state opt-in plaintiffs. The original Plaintiffs control the Court's personal jurisdiction analysis, and because the Court may assert personal jurisdiction over the Plaintiffs' claims, it may also assert jurisdiction over potential out-of-state opt-in plaintiffs' claims.

Finally, the Court adopts Plaintiffs' proposed notice procedure in part. Plaintiffs have not shown unique circumstances to justify the need for social security numbers.  Defendants must therefore comply with Plaintiffs' proposed notice procedure except that Defendants need not provide Plaintiffs' counsel with social security numbers of putative members of the proposed collective.

16

Accordingly, IT IS ORDERED that the motion (Doc. 32) is GRANTED in part and DENIED in part.

The proposed class as listed in Attachment A of Plaintiffs Brief in Support of Motion to Issue Notice (Doc. 33-1) is conditionally certified.  Plaintiffs' proposed notice (Doc. 33-2), Plaintiffs' Consent to Join Form (Doc. 33-3), Plaintiffs' proposed script (Doc. 33-4), and Plaintiffs' Reminder of Deadline (Doc. 33-5) are APPROVED.

IT IS FURTHER ORDERED that AutoZone shall have twenty (20) days to provide Plaintiffs' counsel, in computer-readable electronic format, the names, mailing addresses, email addresses, and telephone numbers of all putative members of the proposed class.

IT IS FURTHER ORDERED that Plaintiffs' counsel shall have twenty (20) additional calendar days to mail and email the approved Initial Notice and Consent to Join Form (Doc. 33-3) to all members of the proposed collective and to file notification that such notices have been mailed.

IT IS FURTHER ORDERED that for Initial Notices returned by mail or email as undeliverable, non-attorney staff for Plaintiffs' counsel shall contact those members of the proposed collective by phone utilizing Plaintiffs' proposed script (Doc. 33-4).

IT IS FURTHER ORDERED that Plaintiffs' counsel shall have twenty (25) additional calendar days from after the Initial Notices are mailed and emailed to mail and approved Reminder Notices (Doc. 33-5) to any member of the proposed collective who has not responded to the Initial Notice as described and to file notification that such Reminder Notices have been mailed and emailed.

IT IS FURTHER ORDERED that all putative members of the proposed collective must opt-in to the case within seventy-five (75) days of the date the Initial Notices are mailed by returning an approved Consent to Join Form (Doc. 33-3), signed, to Plaintiffs' counsel for filing with the Court.

IT IS FURTHER ORDERED that all personal information obtained for any store manager who does not opt-in to the collective action shall be destroyed by Plaintiffs' counsel.

DATED this 7th day of November, 2023.

Dana L. Christensen, District Judge
United States District Court

18